## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

STREETMEDIAGROUP, LLC, a Colorado limited liability company
TURNPIKE MEDIA, LLC, a Colorado limited liability company

Plaintiff,

v.

DEPARTMENT OF TRANSPORTATION, STATE OF COLORADO

Defendant.

---

## COMPLAINT

---

Plaintiffs StreetMediaGroup, LLC and Turnpike Media, LLC (collectively, "Plaintiffs"), by and through their undersigned counsel, Fairfield and Woods P.C., hereby file this Complaint against Department of Transportation, State of Colorado ("CDOT") as follows:

### INTRODUCTION

> Innocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech.

*Reed v. Town of Gilbert*, 576 U.S. 155, 167 (2015).

CDOT is charged with regulating outdoor advertising in the State of Colorado, purportedly to advance state interests in public safety and aesthetics, and to implement the Federal Highway Beautification Act. The statutes and regulations that CDOT administers in this regard ("CDOT Program") classify signs for the purposes of regulation based solely on the content of the messages they display. Such "content-based" regulations are presumptively unconstitutional under the First

Amendment to the U.S. Constitution, which is incorporated against the states by the 14th Amendment.

Plaintiffs are outdoor advertising companies that have inventories of existing signs, as well as approvals from local governments for signs that are yet to be constructed. Some of the signs are digital, allowing for display of rotating messages, and some of the signs are static, requiring periodic printing and manual installation of new display faces in order to change messages. Plaintiffs display a variety of messages on their own behalf, on behalf of customers (for compensation), and on behalf of governmental, civic, political, and social service entities to which Plaintiffs frequently donate space and time on their signs.

With regard to Plaintiffs' existing signs, CDOT censors the Plaintiffs' speech by requiring permits for the display of certain messages that the State of Colorado and CDOT have determined require CDOT's prior approval. For four of Plaintiffs' signs (two of which are existing signs), CDOT took 260 days to process those permits, and ultimately deny them.[1] CDOT's censorship is not an abstract or hypothetical circumstance—CDOT issued a written notice of violation to Plaintiff Turnpike Media, LLC ("Turnpike") in the past when Turnpike displayed a message that CDOT sought to censor, causing Turnpike to remove the message.

Based on experience, Plaintiff StreetMediaGroup, LLC ("StreetMedia") considers it futile to seek CDOT approval for similarly situated signs that have been permitted by local governments but not yet constructed. The face of the CDOT regulations and CDOT's threats of enforcement of the CDOT Program unconstitutionally abridge and chill Plaintiffs' right to free speech, causing

---

[1] The permit denials for four of the signs are the subject of an ongoing administrative case, but the Office of Administrative Courts in Colorado lacks jurisdiction over constitutional questions.

immediate and irreparable harm. The CDOT Program also puts several of StreetMedia's time-limited local government approvals at risk of lapsing.

The CDOT Program is patently unconstitutional, particularly in light of the 2015 U.S. Supreme Court case of *Reed v. Town of Gilbert*, 576 U.S. 155 (2015). CDOT cannot carry the burden of justifying its regulatory program under First Amendment "strict scrutiny" or the "commercial speech" tests because there is no evidence that the program advances its stated purposes in any direct way. Moreover, the CDOT permitting program does not provide a brief, specified time frame for decision-making, and is therefore, *per force*, an unconstitutional and impermissible prior restraint on free speech.

Recently, a number of Federal Courts in other jurisdictions have struck down remarkably similar outdoor advertising programs. *See, e.g., L.D. Mgmt. Co. v. Thomas*, 456 F. Supp. 3d 873 (W.D. Ky. 2020); *Thomas v. Bright*, 937 F.3d 721 (6th Cir. 2019), *reh'g denied, en banc*, 2019 U.S. App. LEXIS 33256 (6th Cir. 2019), *cert. denied, Bright v. Thomas*, 2020 U.S. LEXIS 3558 (U.S. 2020); *Reagan Nat'l Adver. of Austin v. City of Austin*, 972 F.3d 696 (5th Cir. 2020). Like these programs, the CDOT Program is unconstitutional, on its face, and as-applied. Plaintiffs submit that the CDOT Program is so fatally flawed that it does not even pass what Justice Kagan referred to in her concurring opinion in *Reed* as the "laugh test."

By this Complaint, Plaintiffs respectfully request that this Court strike the CDOT Program down as a violation of Plaintiffs' First Amendment rights, enjoin CDOT from enforcing the unconstitutional CDOT Program, and award Plaintiffs their attorneys' fees and costs under 42 U.S.C. § 1988.

**PARTIES**

1.      Plaintiff StreetMedia is a Colorado limited liability company with a principal office address of 161 Saturn Drive, Unit 5A, Fort Collins, Colorado 80525.

2.      Plaintiff Turnpike is a Colorado limited liability company with a principal office address of 7300 Broadway, Denver, Colorado 80221.

3.      CDOT is a political subdivision of the executive branch of the State of Colorado.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the Constitution and laws of the United States.

5.      Jurisdiction is further conferred upon this Court by 28 U.S.C. §§ 1343(a)(3) and (4), 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 1983 and 1988, as this is an action for declaratory and equitable relief to redress deprivations, under color of law, of rights, privileges, and immunities secured by the Constitution of the United States.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because CDOT is a political subdivision of the State of Colorado, and a substantial part of the events giving rise to Plaintiff's claims took place in this judicial district.

7.      At all times relevant to this Complaint, and in taking all of the actions described herein, CDOT and its officers, agents, and employees acted under color of law and were effecting, and will effect, the custom, policy, and laws of the State of Colorado.

**GENERAL ALLEGATIONS**

A.      *The 1971 Agreement, the Act, and the Rules*[2]

_____

[2] Collectively, these are the "CDOT Program" referred to in the Introduction to this Complaint.

8.     In 1971, the State of Colorado entered into an agreement ("1971 Agreement") with the United States Secretary of Transportation, acting by and through the Federal Highway Administrator.

9.     As part of the 1971 Agreement, the State of Colorado agreed to establish and enforce statutes and rules regarding outdoor advertising activities in conformity with the Federal Highway Beautification Act, 23 U.S.C. § 131, *et seq.*

10.     CDOT is tasked with regulating outdoor advertising in Colorado, through administration and enforcement of the Act and Rules.

11.     The Act defines "Advertising Device" as:

> any outdoor sign, display, device, figure, painting, drawing, message, placard, poster, billboard, or any other contrivance designed, intended, or used to advertise or to give information in the nature of advertising and having the capacity of being visible from the travel way of any state highway, except any advertising device on a vehicle using the highway. The term "vehicle using the highway" does not include any vehicle parked near said highway for advertising purposes.

> C.R.S. § 43-1-403(1).

12.     The Act defines "On-premise advertising device" as:

> (a) An advertising device advertising the sale or lease of the property on which it is located or advertising activities conducted on the property on which it is located; or

> (b) An advertising device located within a comprehensive development that advertises any activity conducted in the comprehensive development, so long as the placement of the advertising device does not cause a reduction of federal aid highway moneys pursuant to 23 U.S.C. sec. 131.

> C.R.S. § 43-1-403(14).

13.     The Rules define "Advertising Device" as:

> any outdoor Sign, display, device, figure, painting, drawing, message, placard, poster, billboard, structure, or any other contrivance designed, intended, or used to advertise or to give information in the nature of

advertising and having the capacity of being Visible from the Main Traveled Way of any State Highway, except any advertising device on a vehicle using the highway. The term "vehicle using the highway" does not include any vehicle parked near said highway for advertising purposes. [§43-1-403(1), C.R.S.]

2 CCR § 601-3.1.2[3]

14.     The Rules define "Off-Premise Sign" as:

an Advertising Device which advertises an activity, service or product not conducted on the Property upon which the Sign is located.

2 CCR § 601-3.1.18

15.     The Rules defined "On-Premise Sign" as:

an Advertising Device: (1) advertising the sale or lease of a Property on which it is located; (2) or advertising activities on the Property on which it is located;  or (3) located within a Comprehensive Development that advertises any activity conducted within the Comprehensive Development.

2 CCR 601-3.1.20

16.     Under the Rules, On-Premise Signs may:

1. Advertise the principal or primary activities, goods or services available upon the premises;

2. Identify the property upon which the Sign is located;

3. Advertise the property upon which the Sign is located for sale or lease;

4. When located within a Comprehensive Development, advertise activities conducted within the Comprehensive Development;

5. Direct the traveling public to the closest entrance to the premises located upon the property;

6. Include non-Commercial Advertising devices (ex. religious, social or political commentaries) erected by the owner or lessee of property.

2 CCR § 601-3, Rule 6.02.B.

---

[3] While mostly tracking the language of the Act, the Rules insert "structure" into the definition of Advertising Device.

17.     The Rules do not require a permit for the erection or display of "On-Premise Signs."

18.     The Rules do require a permit for the erection and display of "Off-Premise Signs."

19.     The Rules restrict spacing between Off-Premise Signs, depending upon whether the signs are located within an incorporated village or city. 2 CCR § 601-3. Rule 7.00.D.

20.     Colorado's constitution and statutes do not recognize a municipal entity called an "incorporated village."

21.     The Rules prohibit locating an Off-Premise Sign adjacent to or within 500 feet of an interchange, intersection at grade, or safety rest area. 2 CCR § 601-3, Rule 7.00.D. ("Interchange Rule")

22.     The Rules allow the placement of On-Premise Signs within 500 feet of an interchange, intersection at grade, or safety rest area.

23.     The Rules prohibit locating an Off-Premise Changeable Electronic Variable Message Signs ("CEVMS") sign within 1,000 feet on the same side of the highway from another Off-Premise CEVMS sign. 2 CCR § 601-3, Rule 12.00.C.2.a. ("CEVMS Spacing Rule")

24.     Messages displayed on the StreetMedia Signs (defined in Paragraph 34, *infra*) and the Turnpike Signs (defined in Paragraph 55, *infra*) constitute speech that is protected by the First Amendment to the United States Constitution, which is incorporated against the States by the Fourteenth Amendment.

25.     Under the Act and the Rules, signs may be excluded from certain areas based solely upon the message that is displayed on the sign.

26.     Take, for example, a liquor store located in an unincorporated area within 500 feet of an interstate highway interchange. Whether a sign proposed by the liquor store for installation

on its property will be permitted or prohibited by the Act and the Rules turns entirely on the message to be displayed on that sign--

    a.    If the sign displays the name of the liquor store, and perhaps advertises a specific product for sale there, no permit is required, and there is no restriction on the placement of the sign by way of the Interchange Rule.

    b.    If, however, the sign displays any other message (say, the name of a business across the street or a political message that is paid for by a political action committee), then a permit is required, and the sign is prohibited by the Interchange Rule.

    c.    If, however, the sign displays a message supporting the home team (the Denver Broncos), it is not clear whether CDOT would enforce the Rules, because the Denver Broncos are simultaneously: (i) a for-profit commercial enterprise that is not located at the liquor store, and (ii) an organizing feature of Colorado civic life.

27.    On CEVMS signs, messages may rotate between "On-Premise" and "Off-Premise" every few seconds. As such, under the Act and the Rules, a permit or spacing requirement could apply one second and not apply just one second later—depending upon the message displayed.

28.    On static signs, messages may change periodically between "On-Premise" and "Off-Premise." As such, under the Act and the Rules, a permit or spacing requirement could apply to any particular sign at some times but not at other times—again, depending upon the message displayed.

29.    The Act and the Rules are "Content-Based" because they apply to speech based on the topic discussed or the idea or message expressed.

30.    Content-based regulations on speech are, in general, subject to strict scrutiny review as set out in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015). CDOT cannot carry its burden of

proving that the Act and the Rules are the least restrictive means to advance compelling governmental interests.

31.     Even if the Act and the Rules were construed to exclusively burden "commercial speech," the Act and the Rules also fail the "commercial speech test" set out in *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557 (1980), and recently articulated by the Tenth Circuit in *Aptive Envtl., LLC v. Town of Castle Rock*, 959 F.3d 961 (10th Cir. 2020), because CDOT cannot carry the burden of proving that that harms it recites are real and, further, that the Act and the Rules will *in fact* alleviate those harms to a material degree.

B.      *StreetMedia and StreetMedia Signs*

32.     StreetMedia is a seller of advertising space on outdoor advertising devices, as such devices are defined in C.R.S. § 43-1-401, *et seq.* ("Act"), and in 2 CCR 601-3 ("Rules").

33.     As part of its business, StreetMedia purchases, leases, licenses, or seeks easements on property, in order to install structures and signs upon which to display messages.

34.     StreetMedia's sign inventory ("StreetMedia Signs") includes both "static" signs, and CEVMS signs.

35.     StreetMedia Signs display messages for for-profit businesses, non-profit public service entities, political causes, civic causes, governmental entities, and StreetMedia itself.

36.     StreetMedia is generally compensated for the display of messages on StreetMedia Signs.

37.     StreetMedia also contributes to non-profit public service entities, political causes, civic causes, and governmental entities by allowing them to display messages on StreetMedia Signs without compensation or profit to StreetMedia.

38.     StreetMedia also works with other corporate and civic sponsors to display civic messages (*e.g.*, "Thank you Firefighters").

39.     StreetMedia has, at considerable expense, obtained regulatory entitlements from local governments to construct additional signs ("Approved Signs"), which as of the date of this Complaint have not yet been constructed.

40.     The Approved Signs include:

        a.     A sign to be located at 48 East 56th Avenue, Denver, Colorado (in unincorporated Adams County) ("56th Avenue Sign")

        b.     A sign to be located at 275 East 64th Avenue, Denver, Colorado (in unincorporated Adams County) ("East 64th Avenue Sign")

        c.     A sign to be located at 1280 West 64th Avenue, Denver, Colorado (in unincorporated Adams County) ("West 64th Avenue Sign")

41.     Despite the fact that the 56th Avenue Sign, the East 64th Avenue Sign, and the West 64th Avenue Sign have Conditional Use Permit approval from Adams County ("County"), a Roadside Advertising Permit ("CDOT RAP") is (currently) procedurally required prior to construction of the signs.

42.     Adams County Conditional Use Permits are time-limited. If the approved sign is not constructed within the allotted time, its Conditional Use Permit (and the property and free speech rights that come with it) will expire. As such, the CDOT RAP process puts StreetMedia's permits, property rights, and free speech rights at risk.

43.     Under the Rules, a CDOT RAP, once issued, must be renewed on an annual basis.

44.     The CDOT RAP is required only for signs that are "Off-Premise Signs."

45.     Neither the Act nor the Rules contain a specified time frame for a decision to issue or deny a CDOT RAP in the first instance.

46.     The definition of "Off-Premise Signs" in 2 CCR § 601-3.1.18 relates only to the content of the message that is displayed, and has nothing to do with the structure, location, or size of the sign itself.

47.     StreetMedia applied for a CDOT RAP for the 56th Avenue Sign on January 29, 2018.

48.     CDOT denied the CDOT RAP for the 56th Avenue Sign 260 days later, on October 16, 2018.

49.     StreetMedia applied for a CDOT RAP for the East 64th Avenue Sign on January 29, 2018.

50.     CDOT denied the CDOT RAP for the East 64th Avenue Sign 260 days later, on October 16, 2018.

51.     StreetMedia is currently engaged in administrative litigation in the Colorado Office of Administrative Courts with regard to CDOT's interpretation of the Rules as applied to the 56th Avenue Sign and the East 64th Avenue Sign ("Administrative Litigation").

52.     Colorado's Office of Administrative Courts does not have jurisdiction to hear constitutional questions.

53.     StreetMedia did not apply for a CDOT RAP for the West 64th Avenue Sign, and the West 64th Avenue sign is not a part of the Administrative Litigation.

C.      *Turnpike and its Turnpike Signs*

54.     Turnpike is a seller of advertising space on outdoor advertising devices, as such devices are defined in the Act and the Rules.

55.     Turnpike owns two outdoor advertising devices that are located at 7300 Broadway, Denver, Colorado 80221 ("Turnpike Signs"). One is oriented towards U.S. 36. The other is oriented towards Interstate 25.

56.     The Turnpike Signs includes both "static" sign faces and CEVMS sign faces.

57.     Until CDOT issued a notice of noncompliance on January 19, 2016, Turnpike Signs displayed messages for for-profit businesses, non-profit public service entities, political causes, civic causes, and Turnpike itself.

58.     On information and belief, CDOT issued the notice of noncompliance based on a complaint by a competitor of Turnpike.

59.     After January 19, 2016, Turnpike Signs displayed messages regarding the business that is located at 7300 Broadway ("Unser Property"), and on occasion, messages regarding civic matters (*e.g.*, "Thank You Firefighters")

60.     Turnpike applied for a CDOT RAP for the Turnpike Signs on January 29, 2018.

61.     CDOT denied the CDOT RAP for the Turnpike Signs 260 days later, on October 16, 2018.

62.     Turnpike is a party to the Administrative Litigation.

D.     *CDOT Enforcement*

63.     In the Administrative Litigation, StreetMedia has taken the sworn depositions of CDOT personnel who administer and oversee the CDOT Program.

64.     CDOT enforcement officers must read signs, and based on the message on the sign, thereafter decide whether to conduct further investigation in order to determine whether the Act and the Rules apply to the sign.

65.     Neil Lacey is a 28-year veteran of CDOT, who currently holds the title "Branch Manager for Project Development Services."

66.     In his current position, Mr. Lacey oversees the CDOT Program.

67.     In a sworn deposition, Mr. Lacey testified as follows:

> Q.      If you drove past the Unser property and saw an advertisement on one of their signs for Century Homes, would you investigate?
>
> A.      Yes, I would, given the past history that we have had with that business.
>
> Q.      And how would you know that that sign is improper?
>
> A.      Well, I don't think the sign would be improper. I think the message displayed on the sign would be improper.

68.     CDOT responds to complaints, and enforces the Act and Rules against messages that people complain about.

69.     CDOT applies the Act and Rules in a manner that reflects a speaker preference.

70.     For example, CDOT issued and annually renews permits (applying same the issuance standards) for signs owned and operated by three outdoor advertising companies ("Favored Advertising Companies"), while applying the same rules to deny Plaintiffs the permits that purportedly carry the right to display certain messages.

71.     Likewise, Mr. Lacey testified that the signs identifying Empower Field (the Denver Broncos stadium) are within a Controlled Route (within CDOT's regulatory jurisdiction), but that the signs are not regulated because they are "on-premise."

72.     But Mr. Lacey testified as follows:

> Q. Is there a difference between Empower spending millions of dollars to so-called sponsor the Broncos Stadium and emblazoning "Empower" on multiple sides of that building with huge signs and a naked ad buy on a billboard anywhere else in the country?

A. Probably not.

73.     While CDOT has renewed permits for illegal signs owned by Favored Advertising Companies, and avoided enforcing the Act and Rules against Empower, CDOT denied permit applications submitted by Plaintiffs, purportedly based on the Interchange Rule and the CEVMS Spacing Rule.

74.     CDOT is applying the Interchange Rule and the CEVMS Spacing Rule only because Plaintiffs want to utilize their proposed and existing signs for a variety of messages, including messages that CDOT does not allow without a CDOT RAP.

75.     Indeed, if Plaintiffs limit their free speech to messages that CDOT allows, Plaintiffs would not have to seek a CDOT RAP, and would not be subject to the Interchange Rule or the CEVMS Spacing Rule.

76.     CDOT's permit requirements—as well as its denials of Plaintiffs' permit applications—are based entirely on the anticipated content of the Plaintiffs' proposed signs.

77.     It is clearly established law in the United States and in Colorado that content-based restrictions on free speech are presumptively unconstitutional.

78.     It is clearly established law in the United States and in Colorado that censorship and prior restraints that are not fettered by specified timeframes and the availability of prompt judicial review in the event of an adverse decision constitute a violation of constitutionally protected free-speech rights.

### FIRST CLAIM FOR RELIEF
### (DECLARATORY RELIEF)

79.     Plaintiffs incorporate their allegations set forth in paragraphs 1 through 78, above, as if fully set forth herein.

80.     The Act and the Rules are unconstitutional under the First Amendment to the U.S. Constitution, as applied to state governments by the Fourteenth Amendment, both on their face and as-applied, because:

a.     The Act and the Rules impose an impermissible prior restraint on free speech in that they do not include a specified, brief time frame for decision making on a CDOT RAP, as required by *Freedman v. Maryland*, 380 U.S. 51 (1965) and *Mahaney v. Englewood*, 226 P.3d 1214 (Colo. App. 2009), and in the instant case, CDOT took 290 days to process and ultimately deny the applications for CDOT RAPs for the 56th Avenue Sign, the East 64th Avenue Sign, and the Turnpike Signs.

b.     The Act and the Rules impose a content-based restriction on protected speech that cannot survive strict scrutiny;

c.     Alternatively, the Act and the Rules impose a content-based restriction on protected, lawful, non-misleading commercial speech in a manner that cannot survive the "commercial speech test" (which is also sometimes known as "intermediate scrutiny") because CDOT cannot demonstrate that the Act and the Rules directly and materially alleviate a "real harm."

81.     The Act and the Rules are unconstitutional under the due process clause of the Fourteenth Amendment because they are vague and / or overbroad.

82.     The allegations set forth in this Complaint set forth an actual controversy between Plaintiff and CDOT.

83.     As such, this Court should declare the rights of Plaintiff, and specifically that Plaintiff is entitled to a declaration that the Act and the Rules are unconstitutional, both on their face and as applied to Plaintiffs.

### SECOND CLAIM FOR RELIEF
### (42 U.S.C. § 1983)

84.     Plaintiffs incorporate their allegations set forth in paragraphs 1 through 83, above, as if fully set forth herein.

85.     At all relevant times, and in performing all of the actions alleged herein, CDOT acted under color of the statutes of the State of Colorado and the regulations promulgated by CDOT pursuant thereto.

86.     While so acting, CDOT deprived Plaintiff of its rights under the First and Fourteenth Amendments to the U.S. Constitution.

### THIRD CLAIM FOR RELIEF
### (INJUNCTIVE RELIEF)

87.     Plaintiffs incorporate their allegations set forth in paragraphs 1 through 78, above, as if fully set forth herein.

88.     The threatened enforcement of the Act and the Rules chills Plaintiffs right to free speech on their existing signs, to an extent that violates the First and Fourteenth Amendments.

89.     The enforcement of the Act and the Rules deprive Plaintiffs of their rights guaranteed by the First and Fourteenth Amendments to engage in constitutionally-protected speech, to be free from prior restraint, and to disseminate both noncommercial speech and truthful, non-misleading commercial speech.

90.     The enforcement and threatened enforcement of the Act and the Rules also deprive and threaten to deprive the rights of Plaintiffs (as well as their customers, potential customers, and nonprofit entitles that benefit from Plaintiffs' donations of space and time on Plaintiffs' signs) under the First and Fourteenth Amendment to display messages, which has caused and threatens to cause in the future irreparable harm to Plaintiff for which there is no adequate remedy at law.

16

91.     Because Plaintiff has suffered and will continue to suffer irreparable harm due to the CDOT Program, Plaintiff is entitled to the issuance of preliminary and permanent injunctive relief, enjoining CDOT from further enforcement of the Act and the Rules as they relate to the allegations set forth herein.

WHEREFORE, Plaintiff respectfully requests that this Court issue a declaration in Plaintiff's favor, declaring the Act and the Rules unconstitutional, and enjoining CDOT from further enforcement of the Act and the Rules as they relate to the requirements for permitting Off-Premise Signs, and for an award of Plaintiff's attorneys' fees and costs under 42 U.S.C. § 1988, and for any other relief as the Court deems just and proper.

DATED this 8th day of December, 2020.

FAIRFIELD AND WOODS, P.C.

*/s/ Todd G. Messenger*
Colin A. Walker (#28365)
Todd G. Messenger (#38783)
Andrew J. Helm (#47548)
1801 California Street, Suite 2600
Denver, CO  80202
Telephone:  (303) 830-2400
Facsimile: (303) 830-1033
E-Mail: cwalker@fwlaw.com;
tmessenger@fwlaw.com; ahelm@fwlaw.com