IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-03602-RBJ

STREETMEDIAGROUP, LLC, a Colorado limited liability company and
TURNPIKE MEDIA, LLC, a Colorado limited liability company,

    Plaintiff,

v.

HERMAN STOCKINGER, in his official capacity as SECRETARY OF THE STATE OF
COLORADO TRANSPORTATION COMMISSION; and
SHOSHANA LEW, in her official capacity as EXECUTIVE DIRECTOR OF THE
DEPARTMENT OF TRANSPORTATION, State of Colorado
DEPARTMENT OF TRANSPORTATION, State of Colorado,

    Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

The State of Colorado and the Colorado Department of Transportation ("CDOT") require permits to erect certain signs and billboards. Plaintiffs StreetMediaGroup, LLC and Turnpike Media, LLC wish to erect signs and billboards unencumbered by CDOT's current permitting process. They brought this lawsuit alleging that CDOT's permitting process is unconstitutional and seeking declaratory and injunctive relief. Defendants CDOT, CDOT's Executive Director Shoshanna Lew, and Colorado Secretary of Transportation Herman Stockinger moved to dismiss the complaint for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1); 12(b)(6). For the reasons articulated below, defendants' motion (ECF No. 59) is GRANTED.

## I. BACKGROUND

Federal law requires that states control the erection and maintenance of outdoor advertising along interstate highways "in order to protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty." Highway Beautification Act § 1, 23 U.S.C. § 131. CDOT has long regulated outdoor advertising in Colorado, both to implement the federal act and to advance the State's interests in public safety and aesthetics. *See* C.R.S. § 43-1-402. CDOT requires permits for certain types of signs and billboards.

Prior to June 2021, Colorado took a piecemeal approach to determining which signs required permits. The old regimen began with a broad definition of "advertising devices," required permits for those devices, and excepted certain "advertising devices" from the general permit requirement. *See* Outdoor Advertising Act, 2021 Colo. Sess. Laws 2588, §§ 43-1-403(1), (4), (13), (14); 43-1-404; 43-1-407; C.R.S. §43-1-403(12). One key exception allowed "on-premise" advertising devices, defined as signs advertising the property or comprehensive development on which they are located, to be erected without a permit. *Id.* On June 20, 2021, Governor Polis signed the Outdoor Advertising Act (the "current act"), which changed Colorado's approach to advertising permits. *Id.* at p.10. The current act narrowed the definition of "advertising device" and eliminated nearly all exceptions to the permit requirement. *See id.* In other words, almost all "advertising devices" now require permits, but signs and billboards not requiring a permit are excluded from the definition of "advertising device" instead of, as before, included as an "advertising device" but excluded from the permit requirement. "Advertising devices" in Colorado now include only those signs and displays "for which compensation is

2

directly or indirectly paid or earned in exchange for its erection or existence by any person or entity." C.R.S. § 43-1-403(1) (2021). Devices that are part of a "comprehensive development" are excluded from the definition of advertising device. *Id.* According to the plaintiffs' characterization of the legislative history, the new approach was adopted to define which signs required permits without looking to their content—signs previously classified as "off-premise" because their content advertised faraway properties are now largely regulated because they are "advertising devices" erected in exchange for compensation. *See* ECF No. 55 at ¶76.

On August 4, 2021 CDOT adopted emergency rules to implement the current act ("emergency rules"). *See* Colo. Code Regs. eDocket, Tracking Number 2021-0048, https://www.sos.state.co.us/CCR/eDocketDetails.do?trackingNum=2021-00488. The emergency rules provided additional detail about the permitting process for advertising devices. *See id.* Shortly after the complaint was filed, CDOT was soliciting comments on whether to make the emergency rules permanent. *See* ECF No. 63-1 at 1. Plaintiffs apparently anticipated the emergency rules' permanent adoption and challenged those rules in their complaint. *See, e.g.*, ECF No. 55 ¶¶212. After all briefing had concluded, CDOT did indeed permanently adopt the new rules (the "current rules"). The current rules are nearly identical to the emergency rules save a supplemental section allowing persons to petition the CDOT director for a declaratory order to clarify uncertainty about the permitting process or requirements.[1] *See* 2 Colo. Code Regs. § 601-3 (2021) (current rules); *id.* at §14.00 (permitting declaratory orders).

---

[1] Although a court ruling on a Rule 12(b)(6) motion may generally consider only the contents of the complaint, courts may also consider matters of which they may take judicial notice. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). I find it appropriate to consider the current rules at this stage because they are public regulations of which I may take judicial notice.

Plaintiff StreetMedia sells advertising space on various roadside signs and billboards. ECF No. 55 at ¶102. StreetMedia applied for permits in the summer of 2021. *Id.* at ¶119. CDOT denied those applications as "incomplete" because they failed to provide required information about, among other things, the proposed signs' location.[2] ECF No. 59-1. CDOT issued a permit for one of StreetMedia's signs.[3] ECF No. 64-1. Plaintiff Turnpike also sells advertising space on outdoor signs. ECF No. 55 at ¶134. Turnpike applied for permits for its signs in 2018, over three years before the current act came into effect, and those permits applications were denied in September 2018. *Id.* at ¶¶143–44. Turnpike believes that its signs should be exempt from permit requirements under the current act.

Plaintiffs filed their Third Amended Complaint on July 19, 2021 alleging 11 claims for relief. *See* ECF No. 55. After defendants filed their motion to dismiss, plaintiffs voluntarily dismissed five claims. *See* ECF No. 62. Plaintiffs' remaining claims allege that the current act and the emergency rules, which have now been made permanent, violate the First Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. They seek declaratory and injunctive relief.

## II. ANALYSIS

Plaintiffs allege a variety of constitutional violations. They claim that the current act and rules curtail protected speech in violation of the First Amendment Free Speech Clause, are

---

[2] I consider the permit denials because they are indisputably authentic, referred to in the complaint, and central to the plaintiffs' claim. *See GFF Corp. v. Associated Wholesale Grocers*, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).

[3] I find it appropriate to consider this permit because it is a matter of public record of which I may take judicial notice. *See Gee*, 627 F.3d at 1186 (holding that courts may consider matters of which they may take judicial notice).

impermissibly vague in violation of the Fourteenth Amendment Due Process Clause, and establish unjustifiably disparate legal regimes for similarly situated plaintiffs in violation of the Fourteenth Amendment Equal Protection Clause.  *See* ECF No. 55 at ¶¶208, 212, 216, 222. Defendants respond that plaintiffs lack standing to challenge the current act and rules, that plaintiffs' challenges are not ripe, and that the current act and rules do not violate the constitution.  *See* ECF No. 59.

### A. <u>Standing</u>

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting U.S. Const. art. III, § 2).  The doctrine of standing helps identify "the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Standing is a jurisdictional issue that requires at least three elements: injury in fact, causation, and redressability.  *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1171 (10th Cir. 2021).

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006) (en banc) (quoting *Lujan*, 504 U.S. at 560).  "'Allegations of possible future injury' do not satisfy the injury in fact requirement." *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).  "For purposes of the standing inquiry, the question is not whether the alleged injury rises to the level of a constitutional violation.  That is the issue on the merits. For standing purposes, we ask only if there was an injury in fact, caused by the challenged action and redressable in court." *Id.* at 1088.

Plaintiffs assert at least two distinct injuries. First, plaintiffs claim that the current act and rules have curtailed their speech. The complaint does not support this allegation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (holding that conclusory allegations are not entitled to the presumption of truth). There are no allegations that StreetMedia had any applications denied on the merits.[4] The applications submitted in the summer of 2021 were denied for being incomplete because they failed to disclose the locations of the proposed signs. ECF No. 59-1. Turnpike's assertation of injury is even weaker—it has not applied for a permit since 2018, over three years before the current act's passage. *See* ECF No. 55 at ¶¶143–44. A prediction that CDOT might deny its permit applications under the current act is not an injury. *See id.* at ¶139. Because the current act and rules' evaluative criteria were never applied to either plaintiff, plaintiffs fail to allege an injury in fact caused by those criteria.

Plaintiffs also allege that the current act and rules chill their speech and prevent them from erecting signs and billboards due to fear of enforcement. A chilling effect on the exercise of a plaintiff's First Amendment rights may amount to a judicially cognizable injury in fact if it "arise[s] from an objectively justified fear of real consequences." *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir.2004). A plaintiff alleging a chilling effect on speech can satisfy the injury portion of the standing analysis with "(1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they

---

[4] There is even evidence that StreetMedia would have secured permits had they submitted complete applications. CDOT later issued a permit, apparently after StreetMedia submitted an amended application, for one of the signs for which an incomplete application had been submitted in summer 2021. *See* ECF No. 64-1.

presently have no intention to do so because of a credible threat that the statute will be enforced." *Initiative & Referendum Inst.*, 450 F.3d at 1089.

Plaintiffs have alleged injury caused by the current act and rules. They have previously erected signs that would require permits under the current act. *See* ECF No. 55 at ¶¶105–10, 138. They have indicated an intent to engage in similar speech. *See id.* at ¶118 (describing conditional use permits for erecting signs issued to StreetMedia by Adams County); ¶137. And they have plausibly claimed that they are deterred from erecting signs because of a credible fear that CDOT will enforce the current act against permitless signs. *Id.* at ¶¶160, 162.

Plaintiffs satisfy the other two standing requirements, causation and redressability. "[T]he causation element of standing requires the named defendants to possess authority to enforce the complained-of provision." *Bronson v. Swensen*, 500 F.3d 1099, 1110 (10th Cir. 2007). Redressability requires "that a favorable judgment would meaningfully redress the alleged injury." *Initiative & Referendum Inst.*, 450 F.3d at 1098. The named defendants in this case have the authority to enforce the current act and declaring that act unconstitutional or permanently enjoining defendants from enforcing it would redress plaintiffs' alleged chilling injury.

### B. Ripeness

The ripeness doctrine prevents courts from prematurely adjudicating disputes. *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003). It helps courts avoid "entangling themselves in abstract disagreements over administrative policies" and protects agencies from judicial interference before "an administrative decision has been formalized and its effects felt in a concrete way." *Id.* at 807–08. The Tenth Circuit has indicated that, in pre-enforcement First

Amendment challenges, standing and ripeness often boil down to the same issue because, while administrative enforcement actions would yield a better developed record, plaintiffs need not risk actual arrest or prosecution before bringing a claim in federal court. *303 Creative*, 6 F.4th at 1175–76. For similar reasons articulated above, I find plaintiffs' challenges to the Current Act ripe. Plaintiffs' challenge to the emergency rules, which they refer to as the "pending rules, *see* ECF No. 55 at p.2 n.1, was likely unripe before the rules had been adopted, but the complained-of rules have now been permanently adopted with minimal substantive changes. I consider plaintiffs' challenges to the emergency rules to be challenges to the current rules and find the dispute ripe.

### C. First Amendment Challenge

Plaintiffs' fourth and fifth claims allege that the current act and rules are unconstitutional under the First Amendment. They argue that the current act and rules are content-based restrictions that do not survive strict scrutiny. ECF No. 55 at ¶¶208, 212. Alternatively, they argue that the act and rules do not survive any level of First Amendment scrutiny and are an "arbitrary and irrational exercise of power."[5] *Id.*

"Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). Such laws are justified only if they satisfy strict scrutiny, that is, the government must prove that they are narrowly tailored to serve compelling state interests. *Id.* Content-neutral laws are

---

[5] Plaintiffs also argue here that the laws are unconstitutionally vague. That challenge will be dealt with in the next subsection.

subject to intermediate scrutiny, a less rigorous First Amendment test.  *Aptive Env't, LLC v. Town of Castle Rock, Colo.*, 959 F.3d 961, 982 (10th Cir. 2020).

The Court finds that the language of the current act and rules is content-neutral.  It requires permits for signs erected in exchange for compensation without reference to the content of the signs.  *See Reed*, 576 U.S. at 163 (looking to language of challenged code provision to determine whether it was content neutral); *Harmon v. City of Norman, Okla.*, 981 F.3d 1141, 1148 (10th Cir. 2020) (same).

A neutrally written ordinance like the current act might still be deemed content-based if it "cannot be justified without reference to the content of the regulated speech" or if it was adopted because the State disagreed with the message being conveyed.  *Reed*, 576 U.S. at 163 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)) (internal quotations omitted); *see also Harmon*, 981 F.3d at 1148.  Neither litmus test for content-based laws applies in this case.  The permit requirement can be justified without reference to a sign's content—CDOT need not be aware of a sign's content to determine whether compensation was received for its erection.  In fact, plaintiffs' Third Amended Complaint support this conclusion.  It sets forth facts indicting that a sign's content gives CDOT officials no indication of whether the permit regulation applies.  ECF No. 55 at ¶¶97–100 (citing testimony from CDOT employees who could not tell whether signs were advertising devices by looking at pictures).  Nor do plaintiffs plausibly allege that the current act and rules were adopted because the government disagrees with a particular message.  They allege that the current act is a new approach to regulating many of the same signs that required permits under a previous content-based ordinance, ECF No. 55 at ¶¶73–76, but they do not allege any animus towards the messages likely to be displayed on for-compensation signs.  In

9

fact, plaintiffs concede that the government recognized and cured the infirmity of its previous law. *Id.* at ¶76. At best, the complaint alleges that the current act's purpose was to regulate, in a content-neutral manner, signs and billboards previously regulated by a content-based law. But it does not allege, as it must, that the current act's purpose is to regulate those same billboards *because of their content*. I therefore find that the complaint does not describe a content-based restriction, and the current act and rules need not satisfy strict scrutiny.

The current act and rules will be valid under the First Amendment if they are "narrowly tailored to serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791. The narrow-tailoring requirement will be met "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.* at 799; *see also Harmon*, 981 F.3d at 1149. That is the case here. The legislative declaration section of the current act says that the general assembly finds and declares the act "necessary to further . . . substantial state interests," which include protecting public investment in highways, promoting safe driving, enhancing Colorado's scenic beauty, and securing federal highway dollars for the state. C.R.S. § 43-1-402. The state's interest in promoting safe driving alone satisfies the narrow-tailoring requirement. Preventing crashes caused by distracted drivers is a substantial state interest, and the state would less effectively prevent these crashes if it took down signs after they caused motor accidents instead of establishing a prophylactic permitting scheme.

Finally, plaintiffs have not alleged that the current act and rules do not leave open ample alternative channels for communication. This second prong of intermediate scrutiny ensures that the regulated speaker's message is not lost from the public square. *See Ward*, 491 U.S. at 791.

10

Here, Plaintiffs can continue to express their message if they apply for a permit or erect signs without receiving compensation. Although plaintiffs might not be interested in erecting signs without receiving compensation, the applicable First Amendment test concerns itself with the message sought to be communicated. *See Ward*, 491 U.S. at 791 (explaining that, to survive strict scrutiny, a law must "leave open ample alternative channels for communication *of the information*.")(emphasis added); *Harmon*, 981 F.3d at 1149 ("[An ordinance] leaves open ample alternative channels for Plaintiffs to communicate *their message*.")(emphasis added); *Wells v. City & Cnty. of Denver*, 257 F.3d 1132, 1148 (10th Cir. 2001)("[T]he ban leaves speakers with ample alternatives for communicating *their message*.")(emphasis added). A sign's communicative content is separate from the question of whether it was erected in exchange for compensation. *See supra* (holding that a restriction based on whether a sign is for-compensation is not a restriction based on content). Plaintiffs have ample alternative means by which to communicate the messages on their signs. Because plaintiffs do not allege a First Amendment violation, their fourth and fifth claims are dismissed.

### D. Vagueness & Prior Restraint Challenge

Plaintiffs argue that the current act is void for vagueness because the term "advertising device," upon which the permitting scheme hinges, is impermissibly vague, incapable of consistent application, and invites arbitrary and abusive enforcement. ECF No. 55 at ¶¶208, 212, 221–23. "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

Assuming plaintiffs can bring a vagueness challenge, *cf. Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) ("[A] plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim."), they have not stated a claim that the current act is unconstitutionally vague. The complaint offers two reasons why the Act "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill*, 530 U.S. at 732. First, they offer snippets of testimony from CDOT employees who could not tell whether signs were advertising devices by looking at pictures. ECF No. 55 at ¶¶97–100. The touchstone of vagueness, however, is the ability to understand what conduct is prohibited—it does not require that a visual inspection yield this understanding. For example, automotive experts cannot, by studying a picture of a car, determine whether it meets emissions standards. But that does not mean that emissions standards are incomprehensibly vague. Similarly, a CDOT employee's inability to predict, based on sight alone, whether a sign was erected for compensation and is therefore an "advertising device" does not mean that the definition of "advertising device" is incomprehensible. Second, plaintiffs attempt to justify their claim that the current act is vague by pointing out that the status of a sign could change overnight if the owner suddenly receives compensation or a digital sign changes from a free-of-charge message to a compensated one. ECF No. 55 at ¶¶48–49; ECF No. 63 at 11–12. The fact that material changes to a sign affect its classification does not render that classification unconstitutionally vague. Plaintiffs' complaint does not allege how the possibility that signs might change from an "advertising device" to a non-advertising device means that the definition is vague.

Plaintiffs also argue that the current act fits into the second category of unconstitutionally vague laws, those that "authorize[] or even encourage[] arbitrary and discriminatory

enforcement." *Hill v. Colorado*, 530 U.S. at 732. In so arguing, plaintiffs also claim that the act is an impermissible prior restraint on speech because it "places unbridled discretion to chill or punish the exercise of free speech rights in the hands of a government official or agency." ECF No. 55 at ¶223. Prior restraints on speech are not *per se* unconstitutional, but systems that place unbridled discretion in the hands of government officials "will not be tolerated." *Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1250 (10th Cir. 2000). In evaluating a facial challenge, I must consider the state's construction of the act, including its implementation and any rules or regulations. *Id.* at 1253.

The current act specifies much of what must be included in a permit application, sets a deadline by which CDOT must approve or deny a permit application, and grants applicants a right to an administrative appeal. C.R.S. § 43-1-408. However, it provides no guidance for the criteria CDOT should use to evaluate a permit application. *See id.* at §43-1-408(2). Standing alone, the act would be an impermissible prior restraint. *Cf. Kunz v. People of State of N.Y.*, 340 U.S. 290, 293 (1951) (holding that an ordinance which did not articulate any reasons for refusing a permit application impermissibly gave officials discretionary power over prior restraints).

However, the current act must be considered in conjunction with the current rules, which do meaningfully constrain CDOT and its officials' discretion. The rules direct CDOT to issue permits in response to applications that meet the requirements. 2 Colo. Code Regs. 601-3(2.5)(A), (2.6)(A). They delineate nine reasons for which CDOT must deny an advertising permit and five reasons for which they may. *Id.* at 601-3(2.3), (2.11). These reasons are "narrow, objective, and definite standards" that properly guide the permitting authority. *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 151 (1969). They come with notice

13

requirements and the right to an appeal. *See* 2 Colo. Code Regs. 601-3(4), (5). They contain no catch-all provision or vague grant of discretionary authority. *Contra Am. Target Advert.*, 199 F.3d at 1253 (finding that an act empowering a director to revoke or deny a permit if he or she found it served the "public interest" conferred unbridled discretion and violated the prior restraint doctrine). The current act and current rules therefore do not confer "unbridled discretion" to CDOT officials. Plaintiffs' seventh claim for relief, alleging vagueness and unconstitutional prior restraint, is dismissed.

### E. Equal Protection Challenge

Plaintiffs' sixth claim for relief alleges a violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs claim that the current act and rules differentiate between owners of compensated and non-compensated signs, and that such a classification has no rational relation to a legitimate government purpose. ECF No. 55 at ¶¶215–19. They seek a declaration that the current act and rules are unconstitutional.

Defendants respond that the current act does not draw a classification or, if it does, that plaintiffs have not alleged disparate treatment between similarly situated signs. ECF No. 59 at 10–11. I disagree. The current act establishes two different permitting regimes: permits are required for "advertising devices" and not required for other signs and billboards. This is clearly a classification. Plaintiffs sufficiently allege that this classification distinguishes between similarly situated signs—they emphasize that a sign's classification could change instantaneously if money is suddenly paid to the owner even if everything else about the sign remains the same. ECF No. 55 at ¶49. Plaintiffs therefore allege that the current act is subject to an equal protection analysis.

Plaintiffs have not, however, sufficiently alleged that the current act and rules violate the Equal Protection Clause. Plaintiffs ask this Court to review their claim under a rational basis standard. *See* ECF No. 55 at ¶217. "Under this standard, the classification need only bear a 'rational relation to some legitimate end to satisfy the Equal Protection Clause.'" *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1213 (10th Cir. 2002) (quoting *Kinnell v. Graves*, 265 F.3d 1125, 1128 (10th Cir.2001)). I find that the current act and rules meet this burden for the same reasons I found them narrowly tailored to serve a significant government interest. *See supra*. Mere "conclusory allegation[s]" that the current act fails rational basis review cannot save a complaint from a motion to dismiss. *Iqbal*, 556 U.S. at 681. That is all the plaintiffs have provided. Their sixth claim is dismissed.

### F. Other Claims

Plaintiffs' other claims are dismissed. Their tenth claim for relief requests a "declaration that Defendants violated 42 U.S.C. § 1983." ECF No. 55 at ¶243. Such relief is impossible. Section 1983 creates a cause of action for violations of federal rights. It is not a substantive law that can be "violated." To the extent plaintiffs request equitable relief under § 1983 for constitutional violations, they have not sufficiently alleged a constitutional violation and their claim must be dismissed. *See Bruner v. Baker*, 506 F.3d 1021, 1025–26 (10th Cir. 2007). Plaintiffs' eleventh claim requests injunctive relief for alleged constitutional deprivations. Because plaintiffs have not plausibly pled such deprivations, this claim is dismissed.

### ORDER

1. Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint (ECF No. 59) is GRANTED.

2. Plaintiffs' Motion for Preliminary Injunction (ECF No. 41) is denied as moot.

DATED this 6th day of December, 2021.

BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Judge

16